224 N.J. Super. 32 (1988)
539 A.2d 750
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK CULLARS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 7, 1988.
Decided March 29, 1988.
*34 Before Judges DREIER and BAIME.
David Elving Schwartz, designated counsel, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; David Elving Schwartz on the brief).
Leslie Branch, Assistant Prosecutor, argued the cause for respondent (Herbert H. Tate, Jr., Essex County Prosecutor, attorney; Elizabeth Duelly, Assistant Prosecutor, of counsel; Leslie Branch on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
*35 Following a jury trial, defendant was convicted of possession of marijuana with the intent to distribute (N.J.S.A. 24:21-19a(1)). After the jury's verdict, but prior to sentencing, defendant, pursuant to an agreement with the State, entered retraxit pleas of guilty to first degree robbery (N.J.S.A. 2C:15-1) and possession of phencyclidine with the intent to distribute (N.J.S.A. 24:21-19a(1)). The trial court imposed a custodial term of three years on the marijuana conviction and a consecutive sentence of ten years on the first degree robbery offense. As part of the latter sentence, the trial court ordered that defendant serve a period of 18 months without parole eligibility. On the conviction for possession of phencyclidine with the intent to distribute, defendant received a custodial term of three years to run concurrently with the sentence imposed on the first degree robbery offense. Thus, defendant's aggregate sentence is 13 years, 18 months of which must be served without parole eligibility.
On appeal, defendant asserts that (1) the trial court erred by denying his motion to suppress evidence, (2) the sentences imposed on the convictions for first degree robbery and possession of phencyclidine with the intent to distribute did not comport with the terms of the plea agreement and (3) imposition of consecutive sentences was manifestly excessive and unduly punitive.

I.
We first address defendant's argument that the trial court erroneously denied his pretrial motion to suppress evidence. At the hearing on the motion, the State elicited the following facts. At approximately 10:00 p.m. on January 15, 1983, Sgt. John Bingham of the East Orange Police Department was on patrol in a radio car in the vicinity of Central Avenue when he observed defendant standing by the curb, conversing with an unidentified male on the sidewalk. The officer testified *36 that he had been informed previously of an outstanding arrest warrant for defendant and had actually seen it several days before. Although Sgt. Bingham was aware that the complaint and warrant charged defendant with first degree robbery, the officer stated that he had no knowledge whatsoever of the underlying facts concerning that incident. Rather, the officer testified that he had merely been apprised of the existence of the warrant by the detective investigating the matter. Based upon his belief as to the existence of the warrant, the officer arrested defendant.
A cursory search for weapons at the scene revealed nothing untoward. Defendant was thereafter transported to police headquarters where a more thorough search disclosed 56 marijuana cigarettes, plastic bags and several manilla envelopes concealed under defendant's waistband. The total amount of the marijuana seized weighed less than 25 grams.
The trial court denied defendant's motion on the strength of this testimony. Although the State never produced the warrant upon which the arrest was predicated, the court determined that this was unnecessary in light of the uncontradicted testimony of the police officer which it found to be entirely credible.
During the pendency of this appeal, the record was supplemented with a copy of the complaint and warrant upon which the police officer allegedly relied in making the arrest. Our examination of the complaint discloses that the charge of first degree robbery emanated from an incident which allegedly occurred on January 5, 1983. However, it is clear from the face of the document that the complaint and warrant were issued on February 21, 1983, approximately five weeks after the arrest of defendant and the seizure of the contraband. At oral argument, the State was unable to explain this discrepancy. While it is possible that Sgt. Bingham had been told of the robbery allegation by another officer and erroneously believed that an arrest warrant had issued, the record is wholly uninformative on this point. It is also possible that the officer had been told *37 of or had seen an arrest warrant pertaining to a completely unrelated charge which caused him to apprehend defendant.
In any event, we perceive no need to probe further because the paltry record here does not permit us to make a fair judgment of what actually occurred and whether the search and seizure were violative of the Fourth Amendment. Because no arrest warrant was presented at the hearing, the trial court's findings and conclusions may well have been faulty. It would be most inappropriate for us to attempt any assessment of the constitutional efficacy of the search in this setting.
We are, therefore, constrained to remand the matter to the Law Division for a thorough exploration of the circumstances underlying the arrest and search of defendant's person at police headquarters. See, e.g., State v. Dohme, 223 N.J. Super. 485, 489 (App.Div. 1988); State v. Gross, 216 N.J. Super. 98, 111-112 (App.Div. 1987), certif. den. 108 N.J. 194 (1987). Since, under the State's theory, confiscation of the contraband hinged upon the officer's conduct in executing an arrest warrant, we deem it necessary for the State to provide the warrant or evidence of it (see Evid.R. 70) at the remand hearing and establish that it was issued upon probable cause.
The latter requirement, a showing of probable cause supporting the issuance of the arrest warrant, does not impermissibly hamper the interests of law enforcement. We do not question the need of the police to execute arrest warrants based upon the assumption that such warrants have been issued validly upon a finding of probable cause. Plainly, police officers called upon to aid other law enforcement officials in executing arrest warrants are entitled to assume that those requesting such assistance offered the court officer the information requisite to support an independent assessment of probable cause. See, e.g., Whiteley v. Warden of Wyoming Penitentiary, 401 U.S. 560, 568, 91 S.Ct. 1031, 1037, 28 L.Ed.2d 306, 313 (1971); United States v. Wheeler, 800 F.2d 100, 103 (7 Cir.1986); United States v. Longmire, 761 F.2d 411, 415-416 (7 Cir.1985); *38 United States v. Robinson, 536 F.2d 1298, 1299-1300 (9th Cir.1976); State v. Kasabucki, 52 N.J. 110, 120 (1968); State v. Schelle, 126 N.J. Super. 596, 600 (App.Div. 1974); State v. Gillman, 113 N.J. Super. 302, 305 (App.Div. 1971). It is certainly reasonable to assume that issuance of an arrest warrant is not an idle gesture. State v. Kasabucki, supra, 52 N.J. at 120. Where, however, the contrary turns out to be true and the warrant is found to be unsupported by probable cause, "an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." Whiteley v. Warden of Wyoming Penitentiary, supra, 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. See also United States v. Rodriguez, 831 F.2d 162, 165-166 (7 Cir.1987); United States v. Ferreira, 821 F.2d 1, 5 (1 Cir.1987); Morris v. County of Tehama, 795 F.2d 791, 795 (9 Cir.1986); Guerra v. Sutton, 783 F.2d 1371, 1375 (9 Cir.1986); Donta v. Hooper, 774 F.2d 716, 721 (6 Cir.1985), cert. den. ___ U.S. ___, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). When evidence is discovered during a search incident to an arrest in reliance upon an arrest warrant, its admissibility thus turns on whether there was probable cause to support issuance of the warrant. Whiteley v. Warden of Wyoming Penitentiary, supra, 401 U.S. at 568, 91 S.Ct. at 1037, 28 L.Ed.2d at 313. Cf. United States v. Hensley, 469 U.S. 221, 231, 105 S.Ct. 675, 681-82, 83 L.Ed.2d 604, 613-614 (1985); United States v. Longmire, supra, 761 F.2d at 416.
This question, whether or not probable cause existed supporting issuance of the arrest warrant, was not addressed by the trial court at the hearing on the motion. This omission is understandable because defense counsel stipulated that the sole issue presented concerned whether, in fact, an arrest warrant existed. In light of the developments that have occurred during the pendency of this appeal, we are convinced that the interests of justice mandate a full hearing to determine (1) whether the arrest of defendant was made in reliance upon an arrest warrant and (2) if so, whether the requisite probable *39 cause existed to support issuance of the warrant. The matter is remanded to the Law Division for this purpose. Should the Law Division determine that the search and seizure comported with Fourth Amendment standards, the judgment of conviction for possession of marijuana with the intent to distribute shall stand. Conversely, should the Law Division find the search improper, the conviction shall be set aside.

II.
We next turn to defendant's argument that the sentences imposed on the convictions for first degree robbery and possession of phencyclidine with the intent to distribute did not comport with the terms of the plea agreement. Although ambiguously phrased, the principal thrust of defendant's contention is that he erroneously assumed the sentences imposed on these charges would run concurrently with that imposed on the marijuana conviction. According to defendant, the court in taking the plea was duty-bound to apprise him of the possibility that the sentences would run consecutively to that to be imposed on the marijuana charge for which he had been convicted previously but not yet sentenced. Defendant urged that, failing in this obligation, the trial court's ultimate imposition of consecutive sentences exceeded his reasonable expectations under the plea agreement. We disagree.
Whatever personal reservations we might harbor regarding the practice, it is now well-settled that plea bargaining is "firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice." State v. Taylor, 80 N.J. 353, 360-361 (1979). See also State v. Marzolf, 79 N.J. 167, 182 (1979); State v. Thomas, 61 N.J. 314, 321-323 (1972). We in New Jersey are not alone in this development. Other jurisdictions have adopted plea bargaining as an appropriate accommodation of the conflicting interests of society and persons accused of crimes and as a needed response to an ever-burgeoning criminal docket. *40 State v. Taylor, supra, 80 N.J. at 361. See also Santobello v. New York, 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427, 432 (1971). While perhaps the practice might not be needed in an ideal world, "`the fact is that the guilty plea and the often concomitant plea agreement are important components of this country's criminal justice system.'" Bordenkircher v. Hayes, 434 U.S. 357, 361-362, 98 S.Ct. 663, 667, 54 L.Ed.2d 604, 609 (1978), reh'g den. 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978), quoting Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 136, 145 (1977). Properly administered, plea bargaining insures that "scarce and vital judicial and prosecutorial resources will be conserved through a speedy resolution of the controversy." State v. Taylor, supra, 80 N.J. at 361.
In this context, we recently had occasion to state that "[t]o be successful, it is essential that the terms of the agreement be clear and unequivocal and fully understood by the defendant." State v. Cartier, 210 N.J. Super. 379, 382 (App.Div. 1986). The cornerstone of the system is the "`mutuality of advantage'" it affords to the State and the defendant, State v. Taylor, supra, 80 N.J. at 361, quoting Brady v. United States, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747, 758 (1970) and, thus, it is important that the consequences of the plea are fully understood by both parties. Toward that end, our court rules "are designed to assure that a guilty plea will not be accepted unless it is made voluntarily and intelligently with an understanding of the nature of the charges and the consequences of the plea." State v. Cartier, supra, 210 N.J. Super. at 382. See also State v. Brown, 71 N.J. 578, 582 (1976); State v. Nichols, 71 N.J. 358, 361 (1976).
Although R. 3:9-2 makes no specific provision for apprising the defendant at the time of the plea of the possibility that the sentence may be made to run consecutively to that to be imposed on other unrelated charges for which he has been tried and convicted, we deem this course to be the preferable practice. Where it has been brought to the attention of the court *41 that the defendant has either pleaded to or has been found guilty on other charges or is presently serving a custodial term and the plea agreement is silent on the issue, the accused should, in all fairness, be informed of the contingency that all sentences may be made to run consecutively. In our view, the responsibility for assuring a defendant's awareness of the possibility of increased custodial exposure that might arise from imposition of cumulative sentences should not be cast exclusively on the shoulders of defense counsel. See State v. Kovack, 91 N.J. 476, 484 (1982). Although defense counsel has an obvious duty to fully explain this contingency, we are convinced that the trial court should satisfy itself, through specific questions and answers, that the defendant understands the possibility that the sentences may be made to run consecutively with that presently being served or that to be imposed on unrelated charges not embraced in the plea agreement.
It does not follow, however, that the defendant, not so informed, should be entitled to vacate his plea. A guilty plea is not to be set aside whenever the trial court procedures are less than perfect. In this respect, we note that our Supreme Court has rejected a per se rule permitting plea retraction upon the breach of a less than well established safeguard. See State v. Taylor, supra, 80 N.J. at 363. As we have pointed out, R. 3:9-2 does not expressly call upon a court to apprise a defendant at the time of the plea of the contingency that the sentence may ultimately be made to run consecutively with that to be imposed on unrelated charges not embraced in the plea agreement. While we deem that to be the better practice, our research discloses no constitutional or statutory mandate commanding that such advice be given to a defendant.
Against this backdrop, we perceive no sound basis to set aside the plea. It cannot fairly be said that the information conveyed to the defendant was actually false or misleading. Our review of the transcript of the plea proceeding reveals the contrary. In apprising the defendant of the maximum term *42 imposable under the plea agreement, the court made it clear that it was referring only to the charges then being considered. No allusion was ever made to the marijuana charge for which defendant had been tried and found guilty. The most that can be said is that the defendant harbored the belief that he was entitled to one free crime, an unreasonable and abhorrent concept in the context of our system of criminal justice. See State v. Yarbough, 100 N.J. 627, 643 (1985), cert. den. 475 U.S. 1014, 106 S.Ct. 1193, 89 L.Ed.2d 308 (1986). We are thus convinced that the sentences imposed did not defeat defendant's reasonable expectations under the plea agreement. See State v. Kovack, supra, 91 N.J. at 483; State v. Marzolf, supra, 79 N.J. at 183; State v. Cartier, supra, 210 N.J. Super. at 383; State v. Nuss, 131 N.J. Super. 502, 504 (App.Div. 1974).

III.
Finally, we discern no justifiable reason to disturb the sentences imposed on any of the convictions. While it is true that the trial court erroneously delineated as aggravating factors the elements of the drug offenses contrary to State v. Yarbough, supra, 100 N.J. at 633, and State v. Martelli, 201 N.J. Super. 378, 385 (App.Div. 1985), see also State v. Sainz, 107 N.J. 283 (1987), we need not reverse on this basis. Our thorough review of the sentencing transcript discloses that these isolated and fleeting references played no real part in the court's determination of the need for and the quantum of the sentences imposed. We are entirely satisfied that, with the minor exceptions we have noted, the court's statement of reasons satisfied the tripartite test set forth in State v. Roth, 95 N.J. 334 (1984).
We also have no occasion to reverse the court's imposition of a parole ineligibility term on the first degree robbery *43 conviction.[1] We recognize that it is generally inconsistent to impose a parole ineligibility period as part of a sentence that is less than the presumptive term. See State v. Kruse, 105 N.J. 354 (1987). Here, however, the court stated that it was clearly convinced the aggravating factors substantially outweighed the mitigating factors and the sentence imposed comported fully with the plea agreement. See N.J.S.A. 2C:43-6b. See also State v. Guzman, 199 N.J. Super. 346 (Law Div. 1985); but see State v. Nemeth, 214 N.J. Super. 324 (App.Div. 1986). Indeed, defendant specifically acknowledged at the time of the plea proceedings that a parole ineligibility term could be imposed notwithstanding imposition of a sentence at the bottom of the sentencing range. We find no abuse of the court's sentencing authority on this basis.[2]
Finally, we are not persuaded by defendant's argument that the trial court abused its discretion when it directed that the sentences imposed on the convictions for first degree robbery and possession of phencyclidine with the intent to distribute were to run consecutively with that imposed on the marijuana offense. The charges were wholly unrelated. The court correctly referred to and identified the appropriate guidelines adopted by our Supreme Court in State v. Yarbough, supra. We conclude that the sentence was entirely appropriate.

IV.
Accordingly, the judgments of conviction for first degree robbery and possession of phencyclidine with the intent to distribute and the sentences imposed thereon are affirmed. On *44 the conviction for possession of marijuana with the intent to distribute, the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] We note that the term of parole ineligibility imposed by the court is apparently less than that which defendant must serve before being considered for parole. See N.J.S.A. 30:4-123.51a.
[2] In any event, the issue raised is inconsequential in light of the fact that the parole ineligibility period imposed is apparently less than the amount of time defendant must serve under N.J.S.A. 30:4-123.51a. See ante, n. 1.